STATE *v.* DAVIS.

---

### STATE v. HERMAN C. DAVIS.

(Filed 2 March, 1966.)

**Criminal Law § 94—**

The court's admonition to defendant's counsel while counsel was interrogating defendant as a witness, while infelicitous in the choice of words, *held* not to have prevented defendant from presenting all of his evidence or to have prejudiced defendant in the eyes of the jury.

MOORE, J., not sitting.

APPEAL by defendant from *Campbell, J.,* November 1965 Session of RUTHERFORD.

Criminal prosecution on an indictment charging defendant with the felony of first degree murder in the killing of Eurias Logan, and drawn in the language of G.S. 15-144.

The solicitor for the State placed defendant on trial for murder in the second degree or manslaughter as the facts may warrant.

Defendant represented by counsel entered a plea of not guilty. Verdict: Guilty of second degree murder.

From a judgment of imprisonment, defendant appeals.

*Attorney General T. W. Bruton, Assistant Attorney General Charles D. Barham, Jr., and Staff Attorney Wilson B. Partin, Jr., for the State.*

*J. Nat Hamrick for defendant appellant.*

PER CURIAM. The State's evidence tends to show the following facts: About 8 p.m. on 1 October 1965 defendant, Steve Myers, a 17-year old son of Margaret Copeland, and Sam Lipscombe were sitting on a couch in the living room of a house occupied by Margaret Copeland, her grandmother Dovie Whitesides, and Margaret Copeland's son Steve Myers and her 18-year-old daughter Margaret Lee Copeland, and smaller children. Eurias Logan came in and went into a back room where Margaret Lee Copeland and her illegitimate child by him were. After about five minutes Logan came back into the living room. Margaret Copeland was sitting on the arm of the couch by defendant talking over a telephone. When Logan was within about six feet of defendant, Logan pointed his finger at Margaret Copeland and began talking about the baby and some milk. Defendant asked Logan whom he was pointing his finger at. Logan replied not at him, and if he wanted to fight to go outside. Whereupon, defendant stood up and shot Logan with a pistol. Logan fell to the floor, and in about five to ten minutes was

dead. Dr. John Reece performed an autopsy on the body of Logan, and, in his opinion, Logan's death resulted from a massive hemorrhage caused by a penetrating bullet wound of the lower chest and abdomen, rupturing the lower stomach, the liver, and the aorta. Logan's hands were out of his pockets when he was shot, and he had nothing in them.

Defendant's evidence tends to show the following facts: Defendant, Steve Myers, and Sam Lipscombe were sitting on a couch in the living room of the Copeland home. Defendant testified: "We had been there three or four minutes when Eurias came in. Sam and this boy and myself and Margaret was in the living room. Margaret Lee was back in the kitchen or the back room, one; I don't know exactly which one. When Eurias came in, I spoke and he spoke back to me, and he asked me, 'What you doing down here?' and I said to him, 'The same thing you is,' just like that, and he slapped me and pointed his finger in my face, and I said, 'What you do that for?' After he slapped me, he shook his finger in my face and said if you don't like that, and cursed and told me he'd cut my throat, and I told him no, he wouldn't, either, and I shot him. He was standing about as far as from here to that desk from me, about six foot; I was standing on the floor there by the studio couch." Defendant also testified he saw a knife in Logan's hand when he shot him.

In rebuttal the State offered evidence that defendant told a deputy sheriff of Rutherford County, "Eurias Logan smacked him and he shot him," and also told him, "Well, hell, I'll shoot anybody that smacked me."

During the direct examination of defendant by his counsel, after defendant had testified as to the circumstances of his shooting Logan, as quoted above, defendant's counsel asked him: "Now, describe exactly what he said and exactly what he did that led up to the shooting; everything that you remember?" The solicitor objected on the ground he had already testified as to that. Defendant's counsel replied: "No, sir, he hasn't described it in detail." The solicitor replied: "He just told us." Then the judge said: "All right, let him repeat it over again. You sit down and let him do the talking." Then defendant's counsel said: "All right, you do the talking?" Whereupon, the judge said: "Let him do the talking. You just hush; he can talk. Go ahead." After further colloquy between the judge and defendant's counsel, the judge told defendant in substance that if he had anything different to tell about the shooting of Logan than what he had already said to tell it. Defendant replied: "I don't know anything else." Defendant assigns as prejudicial error the judge's remarks to his counsel. While the judge's remarks to defendant's counsel "you sit down" and "you just hush" were not a

felicitous choice of words, yet considering them in the light of the circumstances in which they were made, there is nothing in the record to indicate that the judge prevented defendant from presenting all of his evidence, or that there is any probability the challenged words of the trial judge had any effect upon the jury prejudicial to defendant. *S. v. Faust,* 254 N.C. 101, 118 S.E. 2d 769. These assignments of error are overruled.

We have considered all the other assignments of error by defendant, and they are too tenuous to merit discussion, and all are overruled. In the trial we find

No error.

MOORE, J., not sitting.